UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SARAH JEAN IVERSON, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | Case No. C12-391-MJP-BAT <br><br> **REPORT AND RECOMMENDATION** |

Sarah Jean Iverson seeks review of the denial of her Supplemental Security Income application. She contends that the ALJ erred by (1) failing to evaluate somatoform disorder at steps two and three; (2) failing to consider the effects of Ms. Iverson's physical and mental impairments in combination at step three; (3) failing to include limitations from all severe impairments in evaluating Ms. Iverson's residual functional capacity; (4) relying on vocational testimony that identified jobs precluded by the hypothetical presented; and (5) improperly evaluating Ms. Iverson's credibility. Dkt. 14. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Ms. Iverson is currently 33 years old, has a high school diploma, and has worked as a fast food worker, rehab tech, sales clerk, and child-care teacher. Tr. 59, 159, 174. On October 17,

REPORT AND RECOMMENDATION - 1

2008, she applied for benefits, alleging disability as of January 27, 2008. Tr. 159-61. Her application was denied initially and on reconsideration. Tr. 82-88. The ALJ conducted a hearing on December 16, 2010, and issued a decision on January 7, 2011, finding Ms. Iverson not disabled. Tr. 10-28. As the Appeals Council denied Ms. Iverson's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 3-8.

## II.  THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Ms. Iverson had not engaged in substantial gainful activity since October 17, 2008.

**Step two:**  Ms. Iverson had the following severe impairments: asthma, Graves' disease (with thyroid removal), obesity, posttraumatic stress disorder ("PTSD"), and personality disorder.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Ms. Iverson had the residual functional capacity to perform light work with some additional limitations. She could lift and carry 20 pounds occasionally and 10 pounds frequently. She had no restrictions of sitting, standing, or walking. She must avoid concentrated exposure to pulmonary irritants and hazards. She was limited to simple, repetitive, one- to three-step tasks, and could perform complex tasks for only two-thirds of the workday. She could work in coordination with small groups of one to five coworkers. She could have superficial contact with the general public for one-third of the workday. She could be in the same room or vicinity as the public but could not respond to demands or requests of the public except to refer those demands to others to respond. She should not have work involving math skills.

**Step four:**  Ms. Iverson could not perform her past work.

**Step five:**  As there are jobs which exist in significant numbers Ms. Iverson can perform, she is not disabled.

Tr. 10-24.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

## III.     DISCUSSION

Ms. Iverson argues that the ALJ erred by failing to consider somatoform disorder at steps two and three and for failing to use the special technique for evaluating mental impairments with respect to this impairment.  Dkt. 14 at 5.  The Court agrees.

At step two, a claimant must make a threshold showing that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 416.920(a)(4)(ii), (c).  The step-two inquiry is a "*de minimis* screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment is medically determinable if results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 416.927(a), 416.928.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on the claimant's ability to work.  *Smolen*, 80 F.3d at 1290.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 416.920(a).  The listings describe specific impairments that are considered "severe enough to prevent an individual from doing any gainful activity regardless of his or her age, education, or work experience."  20 C.F.R. § 416.925(a).  A claimant whose impairments either meet or equal a listing is presumptively disabled.  20 C.F.R. § 416.920(a).

The ALJ must use a special technique for evaluating mental impairments.  20 C.F.R. § 416.920a(a).  This technique requires the ALJ to rate the degree of functional limitation resulting from an impairment in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. § 416.920a(c);

REPORT AND RECOMMENDATION - 3

<1>
<1>
<1>
<1>

1  The ALJ then uses the degree of functional limitation in determining whether an impairment is

2  severe and whether it meets or equals a listed impairment. 20 C.F.R. § 416.920a(d).

3        The ALJ must document application of the special technique in the decision. 20 C.F.R.

4  § 416.920a(e). The ALJ's decision "must incorporate the pertinent findings and conclusions

5  based on the technique" and "must include a specific finding as to the degree of limitation in

6  each of the functional areas." 20 C.F.R. § 416.920a(e)(4). Where the ALJ fails to document

7  application of the technique and does not include specific findings as to the degree of limitation

8  in the four functional areas, she has committed reversible error. *Keyser v. Comm'r Soc. Sec.*

9  *Admin.*, 648 F.3d 721, 726 (9th Cir. 2011). An ALJ's failure to comply with 20 C.F.R.

10 § 416.920a is not harmless if the claimant has a colorable claim of mental impairment. *Id.*

11       In October 2008, Jayme Fergoda, MSW, clinical psychology student, supervised by Evan

12 Freedman, Ph.D., performed a clinical evaluation and diagnosed Ms. Iverson with PTSD,

13 Chronic; Major Depressive Disorder, Recurrent, Severe without Psychotic Features; and

14 Undifferentiated Somatoform Disorder. Tr. 329. Ms. Fergoda and Dr. Freedman assigned Ms.

15 Iverson a global assessment of functioning ("GAF") score of 50, indicating serious symptoms or

16 a serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n,

17 Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994).

18 They found that Ms. Iverson's "primary somatic complaints related to her emotional status are

19 fatigue, chest discomfort, migraine headaches, numbness on her left side, and a poor appetite."

20 Tr. 325. They opined:

21     Ms. Iverson demonstrates an unusual degree of concern about health matters and
    physical functioning with probable impairment arising from somatic symptoms.
22     Overt physical signs of tension, such as sweaty palms, trembling hands,
    complaints of irregular heartbeats, and shortness of breath are also present.
23     Physical complaints are likely to include symptoms of distress in several
    biological systems, including the neurological, gastrointestinal, and

REPORT AND RECOMMENDATION - 4

musculoskeletal systems. Tr. 328.

In October 2010, Dr. Freedman completed a set of interrogatories. He opined that Ms. Iverson met the diagnostic criteria for listing 12.07, somatoform disorders, and that the disorder resulted in marked impairment in activities of daily living, social functioning, and concentration, persistence, or pace, as well as repeated episodes of decompensation of extended duration. Tr. 561-62.

In January 2009, state agency consultant Jan Lewis, Ph.D., reviewed the medical record, including the opinion of Ms. Fergoda and Mr. Freedman. Tr. 291. Dr. Lewis included a diagnosis of Undifferentiated Somatoform Disorder in the Psychiatric Review Technique form and found that Mr. Iverson's mental impairments caused mild limitation in activities of daily living and maintaining concentration, persistence, and pace, and moderate limitation in maintaining social functioning. Tr. 293, 299, 303. In April 2009, state agency consultant Carla van Dam, Ph.D., affirmed Dr. Lewis's assessment. Tr. 314.

In evaluating Ms. Iverson's residual functional capacity, the ALJ gave substantial weight to the opinions of Dr. Lewis and Dr. van Dam, some weight to the October 2008 opinion of Ms. Fergoda and Dr. Freedman, and no weight to the October 2010 opinion of Dr. Freedman. Tr. 22. But the ALJ did not mention somatoform disorder in her step two or step three analyses, or elsewhere in the decision.

The court finds that this omission was erroneous. Although Ms. Iverson's treating providers did not diagnose somatoform disorder, an examining doctor and mental health professional opined that Ms. Iverson had somatoform disorder, that the disorder caused at least some impairment in her functioning, and that the disorder met a listing. Two reviewing doctors

affirmed the diagnosis and opined that Ms. Iverson's mental impairments, including somatoform disorder, were severe. This evidence presents a colorable claim that somatoform disorder was a severe impairment. If the ALJ chooses to disregard these opinions, the ALJ must, at the very least, provide specific and legitimate reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). Here, the ALJ gave no reasons, despite giving weight to the opinions later in the decision.

The Commissioner argues that the record supported "the ALJ's finding" that somatoform disorder did not cause Ms. Iverson significant, work-related mental limitations. Dkt. 15 at 7. But the ALJ made no such finding; rather, the ALJ made no findings at all related to somatoform disorder, despite the fact that plaintiff's counsel argued at the hearing that somatoform disorder was a severe impairment and that it met a listing. Tr. 34.

The Commissioner also asserts that symptoms of an impairment alone are insufficient to establish the existence of the impairment, and, similarly, that a diagnosis of an impairment alone is insufficient to establish the severity of the impairment. Dkt. 15 at 7-8. While these assertions are true, it is not the case that the only evidence for somatoform disorder is Ms. Iverson's statement of her symptoms or a diagnosis without any clinical assessment. Ms. Fergoda and Dr. Freedman administered the Personality Assessment Inventory and performed a clinical assessment of Ms. Iverson's functioning. This evidence is sufficient to, at the very least, trigger an analysis of whether somatoform disorder is a severe impairment and whether it meets a listing.

The Commissioner also argues that "because Plaintiff's longitudinal treatment records did not demonstrate Plaintiff experienced disabling limitations, any . . . error is harmless." Dkt. 15 at 10. The Commissioner's argument puts the cart before the horse. The question at step two

REPORT AND RECOMMENDATION - 6

is not whether a claimant is disabled; rather, it is whether she has an impairment that is medically determinable and severe. An ALJ's failure to properly consider an impairment at step two may be harmless where the ALJ considered the functional limitations caused by that impairment later in the decision. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). But here, the ALJ failed to even mention somatoform disorder anywhere in the decision, leaving no means for the Court to determine whether the ALJ considered the effects of this disorder at the later steps.

The ALJ's omission was also problematic because the ALJ failed to document application of the special technique with respect to somatoform disorder. Although the ALJ made findings about Ms. Iverson's limitations in the four functional areas with respect to her PTSD and personality disorder, there is nothing to show that the ALJ included the effects of somatoform disorder in this analysis. This failure was reversible error. *Keyser*, 648 F.3d 726.

Moreover, the ALJ is required to consider the combined effects of a claimant's impairments, even if an impairment by itself would not rise to the level of a severe impairment. 20 C.F.R. § 416.923. If a combination of impairments is medically severe, the ALJ must consider the combined impact throughout the disability determination process. *Id.* The claimant's impairments "'must not be fragmentized in evaluating their effects.'" *Lester*, 81 F.3d 828 (quoting *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)). This is particularly true where the claimant has significant mental and physical impairments, each of which results in some restrictions on her ability to function. *Id.* at 829. Here, there is nothing to indicate that the ALJ considered somatoform disorder in combination with any other impairments, either mental or physical. This omission is particularly glaring given that somatoform disorder is defined by reference to physical symptoms. *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.07 (somatoform disorders are "Physical symptoms for which there are no demonstrable organic findings or

REPORT AND RECOMMENDATION - 7

known physiological mechanisms").

Because the ALJ erred at step two, and the error was not harmless, remand is appropriate. Ms. Iverson asks the Court to remand the case with directions that Dr. Freedman's opinions be credited as true and benefits be awarded. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292). This occurs when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id.* at 1076-77. The Court finds that here, where the ALJ failed to address the issue in the first instance, remand for further proceedings is appropriate. On remand, the ALJ should evaluate somatoform disorder and determine whether it is a medically determinable severe impairment and, if it is, whether, alone or in combination, it meets or equals a listing.

Because the Court recommends remand for further proceedings at step two, the Court does not address the other issues plaintiff raises. On remand, the ALJ should reevaluate the combined effects of all of Ms. Iverson's impairments, evaluate whether Ms. Iverson's impairments, alone or in combination, meet or equal a listing, and, if necessary, reassess Ms. Iverson's credibility and her residual functional capacity, and determine whether evidence from a vocational expert is warranted, all of which relate to the other issues presented in this appeal.

## IV.   CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to

sentence four.  On remand, the ALJ should (1) reevalute the severity of somatoform disorder at step two, (2) develop the medical record as necessary, and (3) proceed to the remaining steps of the disability evaluation process as necessary.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **October 23, 2012.**  If no objections are filed, the matter will be ready for the Court's consideration on **October 26, 2012**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 9th day of October, 2012.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9